Fred Gorton et al., Petitioners *v.* Commonwealth of Pennsylvania, State Civil Service Commission; The Department of Public Welfare et al., Respondents.

Argued December 7, 1977, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Rogers, Blatt and DiSalle.

*Stephen A. Sheller,* with him *Bruce M. Ludwig,* for petitioners.

*John D. Raup,* Assistant Attorney General, with him *Robert P. Kane,* Attorney General, for respondents.

OPINION BY PRESIDENT JUDGE BOWMAN, May 9, 1978:

Petitioners have filed a "complaint in mandamus and petition for review" seeking judicial review of a refusal by the Civil Service Commission (Commission) to investigate and hear petitioners' grievances concerning their assignment, on an allegedly permament basis, to duties and responsibilities allocable to a position classified higher than that to which they, as Commonwealth employees, were nominally designated.

Respondents have raised preliminary objections seeking dismissal of both the complaint and petition for review on the grounds that petitioners have failed to state a basis upon which relief can be granted. By virtue of this demurrer we accept as true all well-pleaded material facts contained within the complaint. *Department of Public Welfare v. Adams County*, 30 Pa. Commonwealth Ct. 164, 373 A.2d 143 (1977).

Petitioners consist of employees of the Commonwealth who were appointed to their positions by the Department of Public Welfare, and are regular employees in "classified service" within the meaning of Section 3(d) of the Civil Service Act (Act), Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. §741.3 (d).[1] Named as respondents are the Department of Public Welfare (Department), the ostensible appointing authority; the Bureau of Personnel, Office of Administration (Bureau), established as part of the Governor's Office to develop and maintain a classification

---

[1] Section 3(k) of the Act, 71 P.S. §741.3(k) defines a "regular employe" as one "who has been appointed to a position in the classified service . . . after completing his probationary period." Section 707, 71 P.S. §741.707, requires that "[t]he classification of positions and the compensation of employes within the classified service shall conform to standards and rules adopted by the Executive Board," which rules are contained in 4 Pa. Code §§19.1-20

program for all agencies under the Governor's jurisdiction; and the Commission whose statutory powers and duties are hereinafter discussed.

In addition to the relevant statutory provisions the parties' relations are controlled by a collective bargaining agreement consummated in August of 1975 by petitioners' bargaining representative and the Commonwealth, Article XXVII of which outlines the respective positions with regard to the classification of employees. Section 1 of this Article provides in pertinent part that

[t]he position classification plan consists of a schedule of class titles with class specifications for each class which define and describe representative duties and responsibilities and sets forth the minimum requirements and qualifications essential to the performance of the work of the class. If an employe considers his position to be improperly classified, the employe shall prosecute an appeal for a reallocation of his position through the fourth step of the grievance procedure set forth in this Agreement. The decision of the Employer shall be final, binding, and determinative of the issue.

Section 2 of the same Article contains the following caveat:

The Union recognizes the right of the Employer to direct its working force, which includes the assignment of work to individual employes, and it further recognizes that such assignments may include work outside an employe's classification. However, it is understood that assignments outside of classification shall be made in a manner consistent with the Employer's operations and organizational requirements.

Section 2 goes on to make provision for payment in the event of temporary assignment to out-of-classification work, and establishes arbitration as the procedure by which Section 2 grievances are to be resolved.

Beginning in 1975 the petitioners complained to the appointing authority, through their Union, that they had been permanently assigned to out-of-classification work. They sought from the Commonwealth either retroactive reclassification to the higher level or reassignment to work they deemed to be within the scope of their classified positions.

Grievances were pursued on an individual basis through the fourth step of the grievance procedure called for in Article XXVII, Section 1 of the Agreement where they were dismissed by the Bureau on the grounds that there had been no extra-classification assignment at all, that job responsibilities complied with preexisting concepts of lower classification work, and because the work assignment was permanent, rather than temporary, Section 2 of Article XXVII did not control.

Petitioners, alleging the Bureau's refusal to reclassify or reassign to be a violation of the Act, then petitioned the Commission to conduct an investigation and schedule a hearing. This request was apparently premised upon the Commission regulation addressing the effect of out-of-title work:

Whenever it shall be determined that any employe is filling a position under a title other than that for which he has been examined and certified, or is performing duties or assuming responsibilities which do not properly belong to the position for which he has been examined and certified, except during an emergency period, the Director may, *in his discretion*, take appropriate action consistent with the provi-

sions of the Civil Service Act. (Emphasis added.)

4 Pa. Code §103.7.

The Commission denied the petition by letter disclaiming any jurisdiction over position-classification. It is from this determination that petitioners have sought review by this Court.

The failure of petitioners to adhere to the Rules of Appellate Procedure, Chapter 15, Judicial Review of Governmental Determination, has unnecessarily raised procedural issues and has served only to obscure rather than clarify the substantive issues. Pa. R.A.P. 1502 declares the petition for review to be the exclusive procedure for judicial review of governmental determinations. Petitioners improperly, in one pleading and without separate counts, complain in mandamus and petition for review of an adjudication, the former addressed to our original jurisdiction while the latter is addressed to our appellate jurisdiction over adjudications of state administrative agencies.[2] However, we shall consider this dual pleading as a petition for review in the nature of mandamus from a governmental determination on the one hand and as an appeal from an adjudication on the other hand. *See* Pa. R.A.P. 1503. As so viewed, have petitioners stated a cause of action cognizable in mandamus or was the Commission's action an adjudication issued without proper notice and hearing which would require our remand to it?

We have held in the past that a letter from the Commission which purported to address the merits of a petitioner's grievance and dismissed the same, was an adjudication which required such concomitant

---

[2] *See* Sections 401 and 403 of the Appellate Court Jurisdiction Act of 1970 (ACJA), Act of July 31, 1970, P.L. 673. *as amended*, 17 P.S. §211.401 and §211.403.

procedures due under the Administrative Agency Law as notice and hearing. *See Roberts v. Office of Administration*, 30 Pa. Commonwealth Ct. 19, 372 A.2d 1233 (1977); *Park v. State Civil Service Commission*, 89 Dauph. 262 (1968). More apposite to the instant case, however, are our decisions in *Department of Health v. Schum*, 21 Pa. Commonwealth Ct. 356, 346 A.2d 599 (1975), and *O'Peil v. State Civil Service Commission*, 13 Pa. Commonwealth Ct. 470, 320 A.2d 461 (1974), both of which addressed a refusal by the Commission to hear the merits of a grievance upon the grounds that a particular grievance procedure was unavailable to the grievant. In each case we held that "[i]nasmuch as [the grievant] had not exhausted, or even been permitted access to, the proper administrative procedures, [the] case is not ripe for an appellate review on the merits and will not be so until the appropriate procedures, including a public hearing, are followed and a proper adjudication is entered." *O'Peil, supra* at 473-74, 320 A.2d at 463; *Schum, supra* at 360, 346 A.2d at 600.

However, the remedy available to a grievant should he disagree with the Commission, believing that a clear duty is imposed upon the agency to entertain his grievance, is in mandamus, *Park v. State Civil Service Commission, supra,* which action will lie to compel a public official to perform a legally mandated ministerial duty when his refusal to act stems from an erroneous interpretation of the law. *Volunteer Firemen's Relief Association v. Minehart,* 415 Pa. 305, 203 A.2d 476 (1964); *Berkowitz v. State Civil Service Commission,* 84 Dauph. 148 (1965).

The Commission's letter abjuring jurisdiction over position-classification grievances was not, in our opinion, an adjudication which reached the merits of the complaint notwithstanding the absence of a hearing and, therefore, an appeal (Section 403 of the ACJA)

does not lie. Nevertheless, we believe that petitioners' "complaint" adequately puts at issue the scope of the Commission's duty to hear these particular grievances with mandamus as the remedy should we determine that the Commission does have jurisdiction over position-classification grievances. Such action constitutes a determination by a government unit reviewable by this Court as within the purview of Pa. R.A.P. 1501(a)(3) and 102. (Section 401 of the ACJA).[3]

What then are the duties and responsibilities of the Commission with regard to the position-classification of Commonwealth employees?

Section 203 of the Act, 71 P.S. §741.203 sets forth the powers and duties of the Commission which, in addition to drafting regulations and making annual reports to the Governor and Legislature, include the following:

> (2) Upon request or on its own motion, as herein provided, in cases of demotion, furlough, suspension and removal [The Commission shall] conduct investigations, hold public hearings, render decisions on appeals and record its findings and conclusions.

[3] As the explanatory note to Rule 1502 reminds us:
[E]xperience teaches that governmental determinations are so varied in character, and generate so many novel situations, that frequently it is only at the conclusion of the judicial process, when a remedy is being fashioned, that one can determine whether the proceeding was in equity, mandamus, prohibition, or statutory appeal, etc. The petition for review will eliminate the wasteful and confusing practice of filing multiple 'shotgun' pleadings in equity, mandamus, prohibition, or statutory appeal, etc., and related motions for consolidation, and will permit the parties and the court to proceed directly to the merits unencumbered by procedural abstractions.

(3) To make investigations *on its own motion and, in its discretion,* on petition of a citizen concerning any matter touching the enforcement and effect of the provisions of this act . . . and the rules and regulations thereunder. (Emphasis added.)

Prior to 1963 Section 203 contained a provision requiring the Commission "to approve, modify or reject such classification plans for the classified service of the Commonwealth. . . ." However, the Act of August 27, 1963, P.L. 1257, deleted this section and added a new Section 707 which provides that "[t]he classification of positions and the compensation of employes in the classified service shall conform to standards and rules adopted by the Executive Board."

Other changes effectuated by the same amendatory Act include a new Section 951 which provides for hearing by the Commission of complaints incident to personal separation, suspension for cause, furlough or demotion for alleged violations of "the provisions of this Act," and for alleged discriminatory personnel action contrary to Section 905.1 of the Act. Petitioners cannot seriously invoke these provisions but appear to argue that subsection (d) of this same section requires the Commission to entertain and hear the grievances of which they complain. This subsection provides:

(d) Notwithstanding any other provisions of this section, the commission may, upon its own motion, investigate any personnel action taken pursuant to this act and, in its discretion, hold public hearings, record its findings and conclusions, and make such orders as it deems appropriate to assure observance of the provisions of this act and the rules and regulations thereunder.

The amendments effected by the Act of August 27, 1963 unquestionably disclose a legislative intent to remove from the authority of the Commission classification of job positions and related compensation and to place this authority in the Executive Board. Subsection (d) of Section 951 cannot be construed as restoring to the Commission, on its own motion or otherwise, authority over these subjects or the duty to entertain complaints and conduct hearings thereon. Rather, its purpose is to afford to the Commission authority to initiate and conduct investigations with respect to any personnel action taken as to subjects over which it continues to enjoy authority. Mandamus does not lie, of course, to compel the performance of a duty or to conduct a hearing on a subject no longer within its statutory authority or power. As directed to respondent Commission the "complaint" in mandamus does not state a cause of action.

Petitioners' remedy lies instead in the procedures provided for in Chapter 28 of the Executive Board's regulations pertaining to position-classification, promulgated pursuant to Section 707 of the Civil Service Act and Section 709 of the Administrative Code of 1929, Act of April 29, 1929, P.L. 177, *as amended*, 71 P.S. §249. *See* 4 Pa. Code §§28.1-28.11.

The Executive Board's position-classification plan constitutes the official plan for classifying all positions occupied by all officers and employees of agencies under the Governor's jurisdiction. Class specifications include the class title, a definition of the class, examples of work performed, required knowledges, skills, and abilities, the experience and training which normally would afford the necessary knowledges, skills and abilities to effectively perform the work, and any other information which may be deemed necessary (§28.2). The plan may be amended (§28.4),

or positions reclassified (§28.7), upon recommendation by the agency head to the Director of Personnel.

Should a disagreement arise with regard to classification, an aggrieved employee covered by a collective bargaining agreement must pursue the grievance procedure outlined in Section 28.9:

> An employe covered by a labor agreement which mandates the classification disagreements be resolved through the grievance procedure shall prosecute an appeal for a reallocation of his position through the appropriate steps of the grievance procedure set forth in the agreement. If the grievance reaches the fourth step, the decision of the Secretary of Administration or designee shall be final, binding, and determinative of the issue.

4 Pa. Code §28.9.

As Section 1, Article XXVII, of the collective bargaining agreement mandates a grievance procedure as referred to in Section 28.9 of the regulations, and as the grievance has proceeded through the final step, then the language of these two provisions is controlling and the decision of the Bureau denying petitioners' grievance is final, binding, and determinative of the issue, subject only to statutorily prescribed arbitration requirements.

Section 903 of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §1101.903 provides that grievances arising under a collective bargaining agreement must be submitted to binding arbitration. This is a mandatory final step in the grievance procedure and provides a reviewable adjudication. *Cf. Manheim Township School District v. State Board of Education*, 1 Pa. Commonwealth Ct. 627, 276 A.2d 561 (1971); *see generally, Appeal of Jones*, 30 Pa. Commonwealth Ct. 549, 552, 375 A.2d 1341, 1342 (1977); *Community College of Beaver*

*County v. Community College of Beaver County, Society of the Faculty,* 17 Pa. Commonwealth Ct. 231, 234, 331 A.2d 921, 923 (1975).

Nothing in the petition indicates that petitioners have pursued this remedy.[4] "Where . . . an administrative remedy is statutorily prescribed the general rule is that a court—be it a court of equity or a court of law—is without jurisdiction to entertain the action." *Lilian v. Commonwealth,* 467 Pa. 15, 18, 354 A.2d 250, 252 (1976); *see* Statutory Construction Act of 1972, 1 Pa. C.S. §1504.

As no proper adjudicative determination is before us and as the Commission is without power or authority to entertain petitioners' grievances, the proceedings must be dismissed.

### ORDER

Now, May 9, 1978, the preliminary objections are sustained and the complaint in mandamus and petition for review is hereby dismissed.

---

[4] Attached to respondents' brief, however, are copies of two arbitration awards, in each instance denying the particular grievance. If such arbitration has indeed been pursued, then the proper procedure is an appeal therefrom pursuant to Pa. R.A.P. 703.